1    WILLIAM M. CROSBY (SBN: 49357)
     13522 Newport Avenue, Suite 201
2    Tustin, CA 92780-3707
     Telephone: (714) 544-2493
3    Facsimile: (714) 544-2497
     Email: wcrosby@wcrosbylaw.com
4
     Attorney for Plaintiff
5    SIDNEY BLUM

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9

10

11   SIDNEY BLUM,                          )   CASE NO. 2:16-cv-07382 AB (PLAx)
                                           )
12           Plaintiff,                    )   **PLAINTIFF'S MEMORANDUM OF**
                                           )   **POINTS AND AUTHORITIES AND**
13   v.                                    )   **ARGUMENT IN OPPOSITION TO**
                                           )   **DEFENDANT'S MOTION FOR**
14   STOUT RISIUS ROSS, INC., a            )   **SUMMARY JUDGEMENT OR, IN**
     Michigan corporation; DOES           )   **THE ALTERNATIVE, PARTIAL**
15   I through X, inclusive,               )   **SUMMARY JUDGMENT**
                             Defendants.   )
16   _____       )   *[Filed and Served Concurrently With*
                                           )   *Plaintiff's Statement of Disputed Issues in*
17                                             *Response to Defendant's Separate*
                                               *Statement of Alleged Undisputed*
18                                             *Material Facts; and Declaration of*
                                               *Sidney P. Blum in Opposition to*
19                                             *Defendant's Motion for Summary*
                                               *Judgment Or, In The Alternative, Partial*
20                                             *Summary Judgment]*

21                                             Hon. Andre Birotte Jr.

22                                             Hearing: August 18, 2017
                                               Time:   10:00 a.m.
23
                                               Removal Date: September 30, 2016
24                                             Trial Date:   March 6, 2018

25       Plaintiff SIDNEY BLUM ("plaintiff" and "Mr. Blum") submits the following

26   Memorandum of Points and Authorities and Argument in Opposition to the Motion for

27   Summary Judgement or, In The Alternative, Partial Summary Judgement, filed by

28   defendant STOUT RISIUS ROSS, INC. ("defendant" and "SRR"):

                                           1

1

TABLE OF CONTENTS

2

<u>Description</u>                                                                    <u>Page(s)</u>

3

TABLE OF CONTENTS                                                         i, ii

4

TABLE OF AUTHORITIES                                                  iii, iv, v

5

I.      INTRODUCTION                                                             2

6

II.     STATEMENT OF FACTS                                                4

7

SRR Fails To Effect Reasonable Accommodation For
8      Plaintiff's Cancer-Related Medical Condition In 2015         4

9      Plaintiff Informs SRR That He Needs Cancer Surgery; SRR Fails
       To Engage In The Interactive Process or Provide A Reasonable
10     Accommodation; Plaintiff is Forced To Work 20 Hours A Week
       During Cancer Treatment And Recovery                          5

11
       Communications Between Plaintiff, SRR And Lincoln Regarding
12     The Coordination Of Plaintiff's Disability Payments And Offsets   5

13     Plaintiff Worked When Not Required For The Same Level Of Income   7

14     Communications Re SDI Reporting and Offsets                  7

15     SRR Fails To Engage Mr. Blum In The Interactive Process
       To Effect Accommodation                                       7
16
       Jaroszewicz's Disingenuous Assertion Regarding Plaintiff's
17     Response To Her January 18, 2016 Email                       8

18     SRR's Continued Failure to Reasonably Accommodate Plaintiff
       Or Engage In The Interactive Process Following His February
19     2016 Return To Work                                           9

20     Plaintiff Self Reports 2015 Overpayment Upon Applying for 2016
       SDI; Discovers He May Have Been Overpaid In 2015 Because
21     SRR Failed To Coordinate SDI With His Compensation           11

22     SRR's CEO Places Mr. Blum On "Suck Line" For Projected Not
       Achieving $1 Million In 2016 Sales, Despite Disability; Three
23     Days Later COO Calls To Get Mr. Blum Fired                   11

24     The EDD Finds No Deceit By Plaintiff                         13

25     Plaintiff Is Denied Fundamental Due Process By SRR           13

26     Plaintiff's "Internal Whistleblowing" Regarding SRR's
       Violations of Applicable Cell Phone Use Law                  13
27

28

i

TABLE OF CONTENTS - (Continued)

<u>Description</u>                                                                                      <u>Page(s)</u>

III.   ARGUMENT                                                                              14

    A.   CANONS OF CONSTRUCTION IN RULING ON A
        MOTION FOR SUMMARY JUDGMENT/SUMMARY
        ADJUDICATION                                                             14

    B.   GENUINE ISSUES OF MATERIAL FACT EXIST AS
        TO PLAINTIFF'S CLAIMS FOR CANCER RELATED
        MEDICAL CONDITION DISCRIMINATION AND
        DISABILITY DISCRIMINATION                                          15

    C.   GENUINE ISSUES OF MATERIAL FACT EXIST AS
        TO PLAINTIFF'S CLAIM FOR FAILURE TO EFFECT
        REASONABLE ACCOMMODATION                                 21

    D.   GENUINE ISSUES OF MATERIAL FACT EXIST AS
        TO PLAINTIFF'S CLAIM FOR FAILURE TO ENGAGE
        IN THE INTERACTIVE PROCESS TO EFFECT
        REASONABLE ACCOMMODATION                                 23

    E.   GENUINE ISSUES OF MATERIAL FACT EXIST AS
        TO PLAINTIFF'S CLAIM FOR WRONGFUL
        TERMINATION BASED ON PUBLIC POLICY                 23

IV.   CONCLUSION                                                                         25

ii

1

## TABLE OF AUTHORITIES

2

<u>Cases</u>                                                                 <u>Page(s)</u>

3

<u>Anderson v. Liberty Lobby, Inc.</u>
     (1986) 477 U.S. 242                                                    14

4

5

<u>Arteaga v. Brink's, Inc.</u>
     (2008) 163 Cal.App.4th 327                                            24

6

<u>Celotex Corp. v. Catrett</u>
     (1986) 477 U.S. 317                                                   14

7

8

<u>Chiaramonte v. Fashion Bed Group, Inc.</u>
     (7th Cir. 1997) 129 F.3d 391                                          20

9

<u>Cochran v. Schwan's Home Service, Inc.</u>
     (2014) 228 Cal.App.4th 1137                                           24

10

11

<u>Cripe v. City of San Jose</u>
     (9th Cir. 2001) 261 F.3d 877, 887                                     22

12

<u>Eastman Kodak Co. v. Image Technical Services, Inc.</u>
     (1992) 504 U.S. 451                                                   14

13

14

<u>Fonseca v. Sysco Food Services of Arizona, Inc.</u>
     (9th Cir. 2004) 374 F.3d 840, 849                                     15

15

<u>Guz v. Bechtel National, Inc.</u>
     (2000) 24 Cal.4th 317, 354-356                                        15

16

17

<u>Hanson v. Lucky Stores, Inc.</u>
     (1999) 74 Cal.App.4th 215                                             22

18

<u>Humphrey v. Memorial Hospitals Association</u>
     (9th Cir. 2001) 239 F.3d 1128                                         23

19

20

<u>Jensen v. Wells Fargo Bank</u>
     (2000) 85 Cal.App.4th 245, 263                                        22

21

22

<u>King v. United Parcel Service, Inc.</u>
     (2007) 152 Cal.App.4th 426                                            20

23

<u>Lake Nacimiaento Ranch Co. v. San Luis Obispo County</u>
     (9th Cir. 1987) 841 F.2d 872                                          14

24

25

<u>Le Bourgeois v. Fireplace Manufacturers, Inc.</u>
     (1998) 68 Cal.App.4th 1049                                            20

26

27

28

iii

TABLE OF AUTHORITIES - (Continued)

Cases                                                                                    Page(s)

Lyons v. England
    (9th Cir. 2002) 307 F.3d 1092, 1113                                                  15

Martin v. Lockheed Missiles & Space Co.
    (1994) 29 Cal.App.4th 1718                                                           20

Matsushita Elec. Industrial Co. v. Zenith Radio Corp.
    475 U.S. 574                                                                         14

McAlindin v. County of San Diego
    (9th Cir. 1999) 192 F.3d 1226, 1236                                                  21

Passantino v. Johnson & Johnson Consumer Products, Inc.
    (9th Cir. 2000) 212 F.3d 493                                                         24

Prilliman v. United Airlines, Inc.
    (1997) 53 Cal.App.4th 935                                                            23

Pugh v. See's Candies, Inc. (Pugh II)
    (1988) 203 Cal.App.3d 743                                                            19

Reeves v. Sanderson Plumbing Products, Inc.
    (2000) 530 U.S. 133                                                                  16

Scotch v. Art Institute of California
    (2009) 173 Cal.App.4th 986                                                           20

Sischo-Nownejad v Merced Comm. College Dist.
    (9th Cir. 1991) 934 F.2d 1104                                                        14

St. Mary's Honor Center v. Hicks
    (1993) 509 U.S. 502                                                                  16

Tameny v. Atlantic Richfield Co.
    (1980) 27 Cal.3d 167                                                                 23

U.S. Airways, Inc. v. Barnett
    (2002) 535 U.S. 122                                                                  21


Jury Instructions                                                                        Page(s)

CACI 2430                                                                                 24

iv

1

## TABLE OF AUTHORITIES - (Continued)

2

<u>Statutes</u>                                                    <u>Page(s)</u>

3

2 Cal. Code of Regs. § 11068(c)                                      22

4

29 CFR § 1630.2(o)                                                   21

5

29 CFR § 1630.2(p)(2)                                                22

6

Federal Rules of Civil Procedure, Rule 56                            14

7

Government Code, § 12926                                             15

8

Government Code, § 12926(p)(2)                                       21

9

Government Code, § 12940(a)                                          15

10

Government Code, § 12940(m)                                          21

11

Government Code, § 12940(n)                                          23

12

Labor Code, § 2802                                                   24

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

v

# I

## INTRODUCTION

This is a case in which the "corporate bottom line" of defendant SRR trumped any concern for the humanity and well being of one of its key employees.  Mr. Blum was in an emotionally and spiritually "low point" due to the debilitating effects of recurring cancer when he was falsely accused of insurance fraud.  As a result, defendant SRR succeeded in its orchestrated attempt to deprive Mr. Blum of his valued employment interest and thereby relieve itself of its obligations to effect reasonable accommodation for his cancer related disabilities under the law.  In this motion, defendant SRR mischaracterizes the factual record and cites inapposite authority for its remarkable assertion regarding the nonexistence of genuine issues of material fact, such that Mr. Blum should be denied a trial of his claims.

At the core of defendant SRR's arguments regarding the alleged nonexistence of genuine issues, is Mr. Blum's purported intentionally false statement in response to a January 18, 2016 letter by Christine Jaroszewicz ("Jaroszewicz"), H.R. Manager, inquiring whether he received short term disability (STD) benefits from the State of California. Defendant SRR claims that Mr. Blum answered "no" to this by a return email the same day.  In fact Mr. Blum sent two emails to Jaroszewicz on January 18, 2016.  In his second email, Mr. Blum states, "no, I don't have the records of actual hours worked, but have recorded all chargeable time." He does not answer the question of whether he received short term disability benefits from the State of California while on short term disability.  Defendant SRR's claim that Jaroszewicz interpreted Mr. Blum's response to mean that he did not receive any STD benefits from the EDD during his leave of absence beginning in September of 2015, is disingenuous. And, since Mr. Blum did not ever state that he had received such benefits, there can be no basis for defendant SRR's contention that his statement was fraudulent, or even that it had a reasonable mistaken belief that it was so.

///

1    Regarding both Mr. Blum's cancer related medical condition discrimination claim
2    and disability discrimination claim, numerous genuine issues of material fact exist to
3    negate defendant SRR's "mistaken good faith belief" defense.  This included that
4    defendant SRR's managerial agents had made numerous discriminatory statements to Mr.
5    Blum, including that he would be held to the same standard as other Managing Directors
6    regarding sales goals, despite his having considerable restrictions as to his productivity
7    due to his having to take time off for cancer treatments; that defendant SRR refused to
8    give him straight answers regarding his eligibility for short and long term disability
9    benefits and FMLA leave, as well as what offsets would be taken due to his simultaneous
10   receipt of STD and EDD payments; that neither defendant SRR nor Lincoln Financial
11   Group would clarify how he was to report time, despite many requests, or how regular
12   and disability pay was to be allocated; and that Michelle Riley ("Riley"), his supervisor,
13   requested that he resign after learning that he would be undergoing additional surgery and
14   falsely accused him of not meeting sales goals, using too much HR time, and using more
15   marketing time than other employees.

16       Regarding Mr. Blum's failure to effect reasonable accommodation claim, numerous
17   genuine issues of material fact exist including that Riley failed to pro rate his annual sales
18   goals, despite his having missed a month for radiation treatment and having missed a total
19   of three to four months due to his cancer related condition; that defendant SRR failed to
20   lighten Mr. Blum's workload in view of his cancer related disability; and that defendant
21   SRR failed to advise Mr. Blum that he could have taken unlimited vacation time in lieu
22   of or in addition to FMLA leave.

23       Regarding Mr. Blum's failure to engage in the interactive process to effect
24   reasonable accommodation claim, at no time did defendant SRR communicate to Mr.
25   Blum regarding the nature of his disability and how it might be accommodated.

26       Regarding Mr. Blum's wrongful termination based on public policy claim, Mr.
27   Blum's email that was forwarded to Ryan Theis ("Theis"), COO, stating that the $40.00
28   per month cell phone reimbursement policy violated Labor Code, § 2802, as well as a

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES AND ARGUMENT IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGEMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1   recent reported case affirming that defendant SRR's "lowball cell phone expense
2   reimbursement policy was unlawful," followed shortly after by Mr. Blum's termination,
3   all support Mr. Blum's claim re the existence of a genuine issue of material fact as to
4   whether his communications regarding defendant's unlawful cell phone policy were a
5   material motivating reason for his termination.

6                                                   **II**

7                                  **STATEMENT OF FACTS**

8   **SRR Fails To Effect Reasonable Accommodation For Plaintiff's Cancer-**
9   **Related Medical Condition In 2015:**

10          Mr. Blum reported a papillary thyroid cancer with Hürthle cell diagnosis to Riley
11   in May 2015.  (D-UMF 3)  Because he was receiving radiation treatment, he decided to
12   work from home under SRR's unlimited vacation and sick leave policy for Managing
13   Directors.  (Blum Decl. ¶ 6)  SRR had no procedures for Managing Directors to seek
14   approval for medical leave. (Blum Decl. ¶ 7; Exs. 1, 7 and 9)  During Mr. Blum's initial
15   disability from June to July 2015 (Blum Decl. ¶ 8) he worked reduced hours resulting in
16   his not meeting sales and chargeability goals because SRR denied his reasonable
17   accommodation request.  (Blum Decl. ¶ 9; Exs. 5 and 15)

18          In October 2015, Riley denied Mr. Blum's request to prorate his annual sales and
19   chargeability goals for the periods he was or would be disabled, a total of 3 to 4 months.
20   (Defendant's MOP, Page 3, line 24 to Page 4, line 4; Blum Decl. ¶¶ 9, 10; Exs. 5, 13 and
21   15)  Mr. Blum emailed Riley that it would have been optimal for him not to work in May
22   and June of 2015. (Blum Decl. ¶ 11; Ex. 6) In December 2015, Riley included disability
23   payments to Mr. Blum as regular wages in determining that Mr. Blum should be denied
24   an annual bonus.  (Blum Decl. ¶ 12; Ex. 14)  Mr. Blum responded the bonus should not
25   be denied because disability payments are not wages. (Blum Decl. ¶ 13; Ex. 13) Riley still
26   refused the reasonable accommodation. (Blum Decl. ¶ 13; Ex. 13)  Mr. Blum's 2015
27   evaluation had only one markdown, wherein he was rated "Inconsistently Met
28   Expectations" for not meeting the $1 million sales goal.  (Blum Decl. ¶ 9; Ex. 15)

**Plaintiff Informs SRR That He Needs Cancer Surgery; SRR Fails To Engage In The Interactive Process or Provide A Reasonable Accommodation; Plaintiff is Forced To Work 20 Hours A Week During Cancer Treatment And Recovery**:

Because the June 2015 radiation failed, in October of 2015, Mr. Blum notified SRR that he needed cancer treatment.  He told Christine Jaroszewicz ("Jaroszewicz"), H.R. Chief, he was too fatigued to work, travel and drive during six weeks of expected radiation and needed advice on applying for California and SRR short term disability ("STD").  (P-UMF 6)  While disabled, he worked approximately 20 hours a week from October to December 2015. (Defendant's MOP, Page 3, lines 19 to 21; P-UMF 6; P-UMF 8; Blum Decl. ¶ 14)  Had SRR prorated sales and chargeability goals, Mr. Blum could have avoided psychiatric care (Blum Decl. ¶ 15) and met those goals.  Mr. Blum was not granted leave as there is no leave procedure for Managing Directors; just unlimited vacation and sick time.  (Blum Decl. ¶ 16)

**Communications Between Plaintiff, SRR And Lincoln Regarding The Coordination Of Plaintiff's Disability Payments And Offsets**:

On October 2, 2015, Jaroszewicz instructed Mr. Blum to apply for SDI.  (Blum Decl. ¶ 17; Ex. 1)  Mr. Blum then applied for SDI.  (Blum Decl. ¶ 18)  Mr. Blum and the EDD informed SRR that he had applied for SDI.  (Defendant's MOP, Page 4, Lines 26 to Page 5, Line 2; D-UMF 15, Blum Decl. ¶ 18)  Jaroszewicz informed Mr. Blum that she would educate herself about SDI. (Blum Decl. ¶ 20; Ex. 1)  Mr. Blum then informed Jaroszewicz of the SDI approval.  (Blum Decl. ¶ 21)  On October 13, 2015 Jaroszewicz informed the EDD that SRR would coordinate the payments to Mr. Blum by reducing Mr. Blum's SRR compensation by the amount that he received in SDI.  (Defendant's MOP, Page 4, Lines 25 to 28; Blum Decl. ¶ 22; Ex. 2)  On June 24, 2016, Jaroszewicz wrote to the EDD confirming SRR's requirement to reduce SRR's payments to Mr. Blum for his SDI receipts.  (Blum Decl. ¶ 22; Ex. 2)  SRR informed Lincoln Financial Group ("Lincoln"), its administrator and adjudicator of STD benefits (Defendant's MOP, Page 4, Lines 9 to 10), that Mr. Blum received SDI. (Blum Decl. ¶ 23; Ex. 3) Lincoln reduced

1    Mr. Blum's disability payments in the amounts equal to his SDI, while another SRR

2    employee received no such reduction. (Blum Decl. ¶ 24; Ex. 36)  Based on SRR

3    informing Lincoln that Mr. Blum was receiving SDI for 2015, Lincoln reduced the

4    amount SRR was to pay Mr. Blum weekly by $950. (Blum Decl. ¶ 25; Ex. 4)

5    Jaroszewicz emailed Mr. Blum that Lincoln would offset his compensation by his SDI

6    receipts, and Mr. Blum assumed this was done. (Blum Decl. ¶ 27; Ex. 7)  Lincoln

7    confirmed it failed to ask Mr. Blum if he was receiving SDI in 2015. (Blum Decl. ¶ 28;

8    Ex. 3)  Therefore, Mr. Blum had no interaction with Lincoln or SRR that could be

9    construed as deceptive and be a basis for termination.

10        SRR considered asking Mr. Blum on October 26, 2015 if he was receiving SDI, but

11   this question was never asked of him in 2015. (Blum Decl. ¶ 29; Ex. 17)  Conversely,

12   Mr. Blum asked Jaroszewicz many times how his STD was calculated.  SRR refused to

13   answer his STD questions and repeatedly referred him to Lincoln. (Blum Decl. ¶ 30; Ex.

14   9; Ex. 11)  Mr. Blum asked Lincoln many times how his STD was calculated.  However,

15   Lincoln refused to answer his questions, including "if any deductions where withheld

16   from those payments," and repeatedly referred Mr. Blum back to SRR. (Blum Decl. ¶ 31;

17   Ex. 8)  Mr. Blum was frustrated that he couldn't get any answers to this critical issue by

18   SRR or Lincoln.  On January 20, 2016 Mr. Blum told Jaroszewicz that he was "trying to

19   do the right thing" and that he would "forward the questions again to Lincoln." (Blum

20   Decl. ¶ 32; Ex. 20)  Mr. Blum again told Jaroszewicz on January 25, 2016 that he couldn't

21   get pay questions answered. (Blum Decl. ¶ 33; Ex. 20)

22        From October 2015 through January 2016, when Mr. Blum was receiving SDI, he

23   accurately bi-weekly reported all money received from SRR to the EDD. (Blum Decl. ¶

24   34; Ex. 31)  While not required, he repeatedly notified the EDD he was receiving

25   disability from SRR. (Blum Decl. ¶ 35; Ex. 19)  He recorded his time off as DTO from

26   October to December 2015, the same category as vacation. (Blum Decl. ¶ 36; Exs. 11 and

27   12)  Under EDD rules, there is no offset required of the SDI for vacation pay, so arguably

28   Mr. Blum's reimbursement of $17,506.29 to SRR was not required.  Only because SRR

1  changed Mr. Blum's 2015 recorded time in late December 2015 from DTO to FMLA was
2  Mr. Blum forced to reimburse the money. (Blum Decl. ¶ 37; Ex. 11)

3  **Plaintiff Worked When Not Required For The Same Level Of Income**:

4  During the 2015 periods Mr. Blum was on disability, he worked around 20 hours
5  a week with the balance of each week on vacation or out sick.  His income would have
6  been the same if he worked 20 hours a week or was on 100% disability.  This indicates
7  that Mr. Blum was a dedicated worker who did not take advantage of his disability.  He
8  received an amount equivalent to his base salary from October to December 2015, but this
9  was not 100% wages instead it was an unknown mixture of pay.  Mr. Blum told
10 Jaroszewicz he was working despite the incentive for him not to work and still receive
11 the equivalent of full compensation.  (Decl. ¶ 38; Ex. 9)

12 **Communications Re SDI Reporting and Offsets**:

13 Carrie Kocincki, HR Manager, informed Mr. Blum that SDI was to be reimbursed
14 to SRR; but said nothing about any actions to be taken by Mr. Blum upon receipt of SDI.
15 Mr. Blum understood that SRR was coordinating his SRR disability payments with SDI
16 to ensure no overpayment.  Therefore, when Mr. Blum received SDI, he was not aware
17 that he needed to inform SRR.  Also, he never stated that he would notify SRR about SDI
18 receipts.  (P-UMF 17; P-UMF 19; Blum Decl. ¶ 39; Ex. 10)

19 **SRR Fails To Engage Mr. Blum In The Interactive Process To Effect**
20 **Accommodation**:

21 Despite Mr. Blum's three fights with cancer (May 2015, September 2015, and May
22 2016) SRR never engaged Mr. Blum in the interactive process to discuss reasonable
23 accommodations.  Therefore, he worked when not required to meet SRR's lofty sales and
24 chargeability goals because his requests for proration were denied.  (Blum Decl. ¶ 40)
25 ///
26 ///
27 ///
28 ///

7

**Jaroszewicz's Disingenuous Assertion Regarding Plaintiff's Response To Her January 18, 2016 Email:**

The January 18, 2016, Jaroszewicz email asked Mr. Blum two questions: the first about recording FMLA time, and the second about 2015 SDI. His response was, "OK. I will record as FMLA and no." (D-UMF 22)  (P- UMF 22; Blum Decl. ¶ 41; Ex. 18) Mr. Blum's response addressed the first question regarding FMLA and non-chargeable work time. He didn't address the second question, as he had separately told Jaroszewicz he had received SDI in 2015. At the time, Mr. Blum was focused on working for a client. Later the same day, he reread his answer, realized it was incomplete and wrote: "Didn't finish my prior response.  No, I don't have the records of actual hours worked, but have recorded all chargeable time." (Emphasis added) Jaroszewicz read and responded to the emails the following day.  She likely read them simultaneously as "OK.  I will record as FMLA and no, I don't have the records of actual hours worked, but have recorded all chargeable time . . . ." This is likely, as Jaroszewicz responded to Mr. Blum's two emails, ". . . make sure that your time records accurately reflect all hours that you are working." This indicates that she knew Mr. Blum's answer "no" was not related to SDI.  Neither of Mr. Blum's emails were, could or might have been about SDI in 2015.  (P- UMF 22; P-UMF 23; Blum Decl. ¶¶ 42, 43, 44; Ex. 18)  Also, Mr. Blum did not recall, nor was he made aware of his second email until after his deposition.

Jaroszewicz must have understood the clear subject matter of Mr. Blum's two email responses of January 18, 2016, as only being related to the reporting of his time. Jaroszewicz's assertion that she understood the responses to be related to Mr. Blum's 2015 SDI are not credible, given that her responses to the two emails the following day were both focused on time and do not even mention SDI.  It is clear that Jaroszewicz read both of Mr. Blum's emails and must have known that the "no" answer referred to Mr. Blum having no records of actual hours worked.  (Blum Decl. ¶ 14; Ex. 18)

///

///

**SRR's Continued Failure to Reasonably Accommodate Plaintiff Or Engage In The Interactive Process Following His February 2016 Return To Work:**

Following Mr. Blum's return to work in early February 2016, his sales revenues and chargeability returned to SRR's expectations. On April 22, 2016, he reminded Riley he was underpaid and had been denied a pay raise in 2015 because his cancer caused him not to meet his sales goals. (Blum Decl. ¶ 45; Ex. 23) In March 2016, Mr. Blum asked Riley to reconsider giving him a pay raise. Riley agreed and organized a compensation meeting on April 25, 2016 (Blum Decl. ¶ 46; Ex. 22) In preparation for this meeting, at Riley's request, Mr. Blum emailed HR on March 29, 2016 asking for 1st quarter sales data, including when he was not working due to his disability, hence another failure of a reasonable accommodation. (Blum Decl. ¶ 47; Ex. 21)  In April, Mr. Blum was diagnosed with a recurrence of cancer. He emailed Riley on May 4, 2016 that he would be out for surgery. (D- UMF 27) Upon learning of the return of Mr. Blum's cancer, SRR retaliated against Mr. Blum as follows:

a) Riley asked Mr. Blum to resign during a call, as noted in Riley's hand-written notes (Blum Decl. ¶ 49; Ex. 28) and as reported twice to HR. (Blum Decl. ¶ 50, 51; Exs. 25 and 26)

b) Riley told Mr. Blum he used too much HR time due to his cancer. This was memorialized in an email by Mr. Blum to Riley on May 4, 2016. The email also identifies "the HR thing is a major concern to the firm . . . ." (Blum Decl. ¶ 50; Ex. 24) This was also emailed to HR on June 3, 2016. (Blum Decl. ¶¶ 49, 52; Ex. 25)

c) Riley told Mr. Blum that he used too much marketing time, and told him that he would receive no more marketing support, a necessity for a Managing Director. (Blum Decl. ¶ 53; Ex. 29)

///

///

///

///

9

d)  Mr. Blum was told his sales were too low and there would be no reasonable accommodation for his cancer disability.  Riley wrote, "Sid and I had a call on April 25, 2016 to discuss Sid's request for an increase in compensation.  I said his origination was too low (allocation origination roughly $125,000 from November 2015 to March 2016) to merit any kind of increase; we are looking at a range of total comp equal to 27% to 30% of allocated origination."  (Blum Decl. ¶ 54; Exs. 27 and 29)

On June 29, 2016, Mr. Blum again complained to HR about the discriminatory treatment, including Riley asking him to resign with the words: "It is evident you are attempting to force me out of the firm." (Blum Decl. ¶ 50; Ex. 26)  On June 30, 2016 Mr. Blum wrote to Thies complaining that the firm was trying to force him out due to his cancer, and that the only reason he had not met his sales goal was due to his cancer. (Blum Decl. ¶ 54; Ex. 26)  Because of SRR's pressures on Mr. Blum to maintain sales and chargeability goals, while missing work for cancer, he suffered severe anxiety and depression for which he was treated by a psychologist and had to take medication.  He still continues treatment.  (Blum Decl. ¶ 57)

After the cancer returned, Riley told Mr. Blum to stop working further putting him behind SRR's sales and chargeability requirements. (D-UMF 30; D-UMF 31; D-UMF 32) Because Mr. Blum could not receive an accommodation, he had to work the day of his deep neck dissection cancer surgery.  (Blum Decl. ¶ 59; Ex. 30)  He told Riley that he wished to continue marketing.  SRR instead dictated that Mr. Blum not work.  (P-UMF 30; P-UMF 31; P-UMF 32; Blum Decl. ¶ 60; Ex. 30)  Dr. Mark Greenstadt did not place Mr. Blum off work, but did require blood tests.  (Blum Decl. ¶ 61; Ex. 38)  Lincoln informed SRR the reasonable accommodation requested by Dr. Greenstadt was no overtime or weekend work.  (Blum Decl. ¶ 62; Ex. 35) Despite this, SRR ordered Mr. Blum to stop working without adjusting his sales and chargeability goals and without having a meeting to discuss reasonable accommodations. (D-UMF 33; Blum Decl. ¶ 63)

///

///

**Plaintiff Self Reports 2015 Overpayment Upon Applying for 2016 SDI;
Discovers He May Have Been Overpaid In 2015 Because SRR Failed To Coordinate
SDI With His Compensation:**

Due to the recurrence of cancer in April 2016, Mr. Blum applied for SDI and SRR was so notified by the EDD.  (D-UMF 29 and D-UMF-35)  During the routine EDD intake interview, Mr. Blum informed the EDD that he was salaried and, in 2015, SRR had paid him an amount equal to his base pay less his SDI receipts.  The EDD employee asked Mr. Blum if he was certain SRR had reduced his pay by the 2015 SDI payments and Mr. Blum responded that he had never checked as he was focused on his health and work. (Blum Decl. ¶ 64) Following the EDD call, Mr. Blum examined his 2015 receipts and discovered that SRR had failed to reduce his 2015 pay by his SDI receipts.  He then contacted the EDD and self-reported that he had been overpaid.  The EDD responded that he could return the overpayment to the EDD or SRR or could appeal the overpayment.  Mr. Blum decided to appeal the overpayment because the bi-weekly reports filed with the EDD all reported he had received both wages and disability from SRR. (Blum Decl. ¶ 65; Ex. 31)  With Mr. Blum's advance knowledge, as part of the appeal process, the EDD contacted SRR in June 2015 to discuss his 2015 SDI.  (P-UMG 37, D-UMF 37)

**SRR's CEO Places Mr. Blum On "Suck Line" For Projected Not Achieving
$1 Million In 2016 Sales, Despite Disability; Three Days Later COO Calls To Get
Mr. Blum Fired:**

On June 20, 2016, Craige Stout, SRR's CEO, emailed Thies: "13) Suck line a. May YTD individual metrics bring out the following names (not saying they are all a problem, just all at or below $1 million total orig number (annualized) I. Sid." (Emphasis added) (Blum Decl. ¶ 68, Ex. 16)  Mr. Blum is first on a list of 15 names.  There is no mention that he was disabled 75 of the 180 days that was the basis of the low sales list.  Three days later, Thies called Mr. Blum with carefully chosen words to justify Mr. Blum's termination.  Theis' call was in bad faith and his stated reasons were pretextual for the following reasons:

a) SRR knew that Mr. Blum was paid 2015 SDI based on its early June call with the EDD. (D-UMF 37) SRR did not mention this call to Mr. Blum. (D-UMF 45; P-UMF 40)

b) Thies stated that he had received confusing paperwork from the EDD related to Mr. Blum's 2015 disability claim, and that he would send these documents to Mr. Blum. This was confirmed by Mr. Blum's email to Thies after the call: ". . . send to me all communications you have had with the state of California as you have stated you are having difficulties." (Emphasis added) (P-UMF 42; Blum Decl. ¶ 71; Ex. 32) Thies never sent such the documents to Mr. Blum that would have allowed Mr. Blum to report his 2015 SDI to SRR. Thies also never wrote back to Mr. Blum that such EDD 2015 paperwork didn't exist, as that would have confirmed Thies' deceitful intent. (Blum Decl. ¶¶ 70, 72)

c) During the call, Thies only inquired if Mr. Blum received state disability payments in 2016. Mr. Blum truthfully responded that he had not received SDI in 2016 and said he would send proof of the denial, which he did. Mr. Blum never sent proof of denial for 2015 SDI because it was not discussed or requested during the call. The focus of the call was Mr. Blum's recent application for 2016 SDI insurance. (P-UMF 41; Blum Decl. ¶ 74) SRR never followed up and asked Mr. Blum why no 2015 denial letter was sent. (Blum Decl. ¶ 75)

d) Thies' statement that he asked Mr. Blum about 2015 is a fabrication. (Thies Decl. ¶ 7; Blum Decl. ¶ 76) It strains credulity that Mr. Blum would state in a phone call he had received no SDI in 2015 and then ask in an email for the 2015 paperwork to be sent to him so he could confirm or correct the SDI amounts that he had received.

e) Following the call, SRR mischaracterized the conversation (D- UMF 41; Blum Decl. ¶ 77) Not suspecting SRR's bad faith, Mr. Blum reminded SRR that they were to send his 2015 EDD paperwork so that it could be completed. Mr. Blum had already discussed the overpayment with the EDD, so it makes no sense that he was attempting to deceive SRR . (Blum Decl. ¶ 79) Further, Mr. Blum would not have asked Thies to send

1   him EDD paperwork related to 2015 for his completion if he had professed not having

2   received such funds.

3   **The EDD Finds No Deceit By Plaintiff:**

4        As noted above, since SRR failed to coordinate Mr. Blum's pay with SDI, resulting

5   in an overpayment (Blum Decl. ¶ 80; Exs. 2 and 34), Mr. Blum self-reported and

6   reimbursed SRR. (P-UMF 43; P-UMF 45; Blum Decl. ¶ 80; Ex. 34)  The EDD requested

7   Mr. Blum to pay the EDD. (P- UMF 43; Blum Decl. ¶ 81; Ex. 33)  The overpayment was

8   only discovered due to Mr. Blum's self-reporting to both SRR and the EDD.  The EDD

9   determined that Mr. Blum was honest and therefore did not penalize him.  It's "Penalty

10   Amount" was $0.  (P- UMF 43; Blum Decl. ¶ 82; Ex. 33)

11   **Plaintiff Is Denied Fundamental Due Process By SRR:**

12        If SRR believed that Mr. Blum was deceptive then, as a national forensic

13   investigation firm, it would have followed its standard procedures and conducted a fair

14   interview of Mr. Blum.  That SRR did not follow this basic protocol raises serious

15   questions as to whether it could have had a "mistaken good faith belief" regarding Mr.

16   Blum's alleged misconduct.  Thies and Stout terminated Mr. Blum while refusing to hear

17   his side of the story during the call.  (P-UMF 46; P-UMF 47; Blum Decl. ¶ 83)  It is

18   further noteworthy that the overpayment by SRR was only discovered because Mr. Blum

19   investigated and reported the results to both SRR and the EDD.  (Blum Decl. ¶ 82)

20   **Plaintiff's "Internal Whistleblowing" Regarding SRR's Violations of**

21   **Applicable Cell Phone Use Law:**

22        On July 10, 2016, Mr. Blum emailed SRR asserting that it was violating California

23   law related to cell phone expense reimbursements.  Mr. Blum stated, "could you please

24   kindly explain how the firm identified the $40 monthly and $200 initial cell phone

25   reimbursement amount? The reason I ask this question is that it appears to fall short of

26   reimbursement requirements under California Labor code section 2802 that requires a

27   reasonable reimbursement of cell phone costs." (Emphasis added)  The email was

28   forwarded to Thies, who fired Mr. Blum four days later.  Mr. Blum estimated a

13

1 | companywide policy compliant with California law would cost SRR an additional
2 | $250,000 annually. (P-UMF 48; P-UMF 49; P-UMF 50; Blum Decl. ¶ 84; Ex. 37)

## III

## ARGUMENT

## A.  CANONS OF CONSTRUCTION IN RULING ON A MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION.

Federal Rules of Civil Procedure, Rule 56 provides in pertinent part: ". . . . The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Rule 56 is to be construed "with due regard for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury." <u>Celotex Corp. v. Catrett</u> (1986) 477 U.S. 317, 106 S.Ct. 2548. Summary judgment is a drastic remedy and it is to be granted cautiously: "Neither do we suggest that the trial court should act other than with caution in granting summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u> (1986) 477 U.S. 242, 106 S.Ct. 2505. "All reasonable inferences must be drawn in the opposing party's favor . . . . At the summary judgment stage, the non movant's version of any disputed issue of fact is presumed correct." <u>Eastman Kodak Co. v. Image Technical Services, Inc.</u> (1992) 504 U.S. 451, 112 S.Ct. 2072. "Even where the basic facts are undisputed, if reasonable minds could differ on the inferences to be drawn from those facts, summary judgment should be denied." <u>Lake Nacimiaento Ranch Co. v. San Luis Obispo County</u> (9th Cir. 1987) 841 F.2d 872. Further, where an employer's state of mind or motivation is in issue, a genuine issue exists precluding summary judgment. <u>Sischo-Nownejad v Merced Comm. College Dist.</u> (9th Cir. 1991) 934 F.2d 1104.

The Court should draw all reasonable inferences in favor of the non moving party, without making credibility determinations or weighing any evidence. <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242.

**B.  GENUINE ISSUES OF MATERIAL FACT EXIST AS TO PLAINTIFF'S CLAIMS FOR CANCER RELATED MEDICAL CONDITION DISCRIMINATION AND DISABILITY DISCRIMINATION.**

The Fair Employment and Housing Act (FEHA) at Government Code, § 12940(a), provides in pertinent part:

"It is unlawful employment practice . . .

(a) For an employer because of the . . . disability, . . . medical condition . . . of any person . . . to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

Under FEHA, "medical condition" is defined as "any health impairment related to or associated with a diagnosis of cancer or a record or history of cancer."  Government Code, § 12926.

In order to prevail in a claim for discrimination under California law, "a plaintiff has the initial burden to make a prima facie case of discrimination by showing that it is more likely than not that the employer has taken an adverse employment action based on a prohibited criterion.  A prima facie case establishes a presumption of discrimination. The employer may rebut the presumption by producing evidence that its action was taken for a legitimate non discriminatory reason.  If the employer discharges this burden, the presumption of discrimination disappears.  The plaintiff must then show that the employer's proffered non discriminatory reason was actually a pretext for discrimination, and the plaintiff may offer any other evidence of discriminatory motive.  The ultimate burden of persuasion on the issue of discrimination remains with the plaintiff."  Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317, 354-356.

An employee can prove pretext to either (1) "directly by showing that unlawful discrimination more likely motivated the employer;" or (2) "indirectly by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable."  Fonseca v. Sysco Food Services of Arizona, Inc. (9th Cir. 2004) 374 F.3d 840, 849; Lyons v. England (9th Cir. 2002) 307 F.3d 1092,

15

1113.

In <u>St. Mary's Honor Center v. Hicks</u> (1993) 509 U.S. 502, the Supreme Court noted: "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, and . . . upon such rejection, '(n)o additional proof of discrimination is required.'" Id. at p. 2749.

In <u>Reeves v. Sanderson Plumbing Products, Inc.</u> (2000) 530 U.S. 133, the U.S. Supreme Court held in an age discrimination case that evidence of the falsity of the employer's proffered explanation as to the reason would be sufficient to establish discriminatory animus:

> "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive . . . . Thus a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at p. 147.

Abundant genuine issues of material fact exist regarding whether defendant SRR's proffered reason for plaintiff's termination, i.e. that plaintiff misled defendant SRR regarding his receipt of STD benefits from the State of California, was worthy of belief. First, in a follow up email approximately three hours after Jaroszewicz's email inquiring whether plaintiff received disability benefits while  on short term disability with defendant SRR, plaintiff provided a further explanation as to that email that he did not have a record of unreported hours.  In addition, the trier of fact should consider all of the following regarding whether defendant SRR's stated reason for terminating plaintiff is worthy of belief:

///

///

///

16

1      1) That plaintiff had over a 30 year career wherein he established an excellent

2  reputation as a Forensic Certified Public Accountant and fraud examiner, having been

3  awarded "Fraud Examiner of the Year" from the 75,000 member Association of Certified

4  Fraud Examiners ("ACFE"), having been a Big 4 Accounting Firm partner and employee

5  of Fortune 50 companies, and having developed client relations with reputable clients

6  over this period without any question ever having been raised regarding his honesty or

7  integrity;

8      2) That Riley twice failed to adjust his sales goals following the recurrence of his

9  cancer in 2015 when he did not have the physical or mental capacity during his recovery

10  from surgery to sell new business over a period of 12 weeks;

11      3) That Riley failed to provide an accommodation or discuss an accommodation

12  with plaintiff, and that she and Theis told him that he would be held to the same standard

13  as other Managing Directors regarding sales goals;

14      4) That Jaroszewicz failed to answer plaintiff's questions regarding offsets against

15  disability benefits with the difference in offsets between short term and long terms

16  benefits;

17      5)   That the third party disability administrator, Lincoln Financial Group,

18  acknowledged that plaintiff received short term disability benefits from the EDD;

19      6)  That defendant SRR informed the EDD that it would coordinate short term

20  disability payments to plaintiff with the EDD, so that it could reduce short term disability

21  payments in an offsetting amount to plaintiff;

22      7) That defendant SRR and Lincoln Financial Group failed to respond to repeated

23  questions by plaintiff regarding how to record time and report information;

24      8)  That in January of 2016, Jaroszewicz told plaintiff that he should ask his

25  questions regarding benefits to Lincoln Financial Group;

26      9) That plaintiff was unable to receive answers to his inquiries regarding how pay

27  was allocated between disability and regular pay, whether his compensation had been

28  through disability or regular pay, or how to record his time;

1    10)   That plaintiff was on an "emotional roller coaster" due to the failure of
2    defendant SRR or Lincoln Financial Group to give him straight answers;

3    11)   That defendant SRR falsely assured plaintiff that it was coordinating his
4    payments with the EDD;

5    12)   That plaintiff truthfully answered "no" to Jaroszewicz's January 18, 2016 letter
6    as to whether he had been receiving short term disability benefits up to 100% of his
7    wages, when in fact he had only received short term disability benefits up to 50% of his
8    wages from defendant SRR, and when he received these wages from defendant SRR he
9    accurately reported them to the EDD;

10   13)   That on May 4, 2016 after learning that plaintiff needed to undergo further
11   surgery, Riley told plaintiff that he should consider resigning for bogus and
12   discriminatory reasons, i.e. that he had used more marketing time than other employees,
13   that he had used too much HR time, that he hadn't reached his sales goals, and that he
14   would receive no further marketing assistance which was needed to reach his sales goals;

15   14)   That in May of 2016 plaintiff told Riley that his reduced work was due to
16   "brain altering medication" and that he may need additional time off due to radiation
17   treatment;

18   15)   That HR told plaintiff that he should use FMLA leave even though he had
19   unlimited vacation time available, and that such time could have been taken
20   simultaneously;

21   16)   That on June 23, 2016, Theis and John Bone, Managing Director, asked
22   plaintiff if he had received disability income from the State of California in 2015, and that
23   plaintiff responded, "send me the paperwork you need for 2015, and I will fill it out;"

24   17)   That plaintiff later asked Theis to provide copies of all communications with
25   the EDD so that he could accurately report what he had been paid in 2015, but that Theis
26   did not provide this paperwork to plaintiff;

27   18)   That on July 14, 2016, the EDD advised plaintiff that a mistake had been made
28   regarding his receipt of disability payments;

1    19)  That the mistake had occurred because defendant SRR had failed in its

2   obligations to coordinate such payments with the EDD and plaintiff;

3    20) That the EDD advised plaintiff that he had accurately and completely filled out

4   his biweekly statements, noting his hours worked, compensation and disability benefits,

5   and for that reason plaintiff would not have to pay any penalties to the EDD for said

6   mistake;

7    21) That plaintiff promptly wired the overpayment back to defendant SRR on

8   August 5, 2016; and,

9    22)  That had defendant SRR fulfilled its obligations to coordinate with the EDD

10  and plaintiff, it would have had full access to all payment information of the EDD to

11  plaintiff.

12    At no time did plaintiff mislead defendant SRR regarding receipt of payments in

13  2015 from the EDD.  Further, defendant SRR had been informed by plaintiff of the

14  receipt of disability payments in 2015, and had acted on this information by requesting

15  the third party disability administrator, Lincoln Financial Group, to reimburse it by a

16  reduced $950.00 weekly.   By failing to send the requested paperwork to plaintiff,

17  defendant SRR denied plaintiff the opportunity to report the receipts to defendant SRR.

18  All of this constitutes abundant evidence of bad faith and pretext on the part of defendant

19  SRR.  See plaintiff's Response to Special Interrogatory No. 3.

20    Certainly a factfinder hearing with all of this evidence could reasonably conclude

21  that defendant SRR's professed reason for terminating plaintiff is not worthy of belief.

22  The four emails referenced in defendant SRR's moving papers, on November 10, 2015,

23  January 18, 2016, June 23, 2016 and July 14, 2016, when considered in the context of all

24  of these facts, render defendant SRR's professed reason for plaintiff's termination, i.e.

25  that plaintiff misled defendant SRR regarding his receipt of STD benefits from the State

26  of California, unworthy of belief.  And, defendant SRR's reference to the broad exercise

27  of managerial discretion affirmed in <u>Pugh v. See's Candies, Inc.</u> (Pugh II) (1988) 203

28  Cal.App.3d 743, is unsupportive of its position, in that such discretion applies only to

1   "good faith" judgments, which for the reasons stated herein plaintiff strongly urges did

2   not exist here.

3          Other cases cited by defendant SRR are inapposite.  In <u>Scotch v. Art Institute of</u>

4   <u>California</u> (2009) 173 Cal.App.4th 986, summary judgment was affirmed.  There were

5   no triable issues as to pretext, where plaintiff lacked the graduate degree that was a

6   prerequisite to the position allegedly denied him for discriminatory reasons.  Nor could

7   he show a causal link between his HIV positive status and the adverse decision.

8          The case most strongly referenced by defendant SRR, <u>King v. United Parcel</u>

9   <u>Service, Inc.</u> (2007) 152 Cal.App.4th 426, is also not in point.  Citing <u>Chiaramonte v.</u>

10  <u>Fashion Bed Group, Inc.</u> (7th Cir. 1997) 129 F.3d 391, the <u>King</u> court noted that the

11  persons who the plaintiff believed had treated him in a discriminatory manner following

12  the onset of his disability, had nothing to do with the decision to terminate him for

13  allegedly falsifying time cards.  In contrast to the shabby treatment accorded plaintiff for

14  several months here, in <u>King</u>, the Court noted the favorable treatment plaintiff had

15  received following his return from a leave of absence.  In <u>Le Bourgeois v. Fireplace</u>

16  <u>Manufacturers, Inc.</u> (1998) 68 Cal.App.4th 1049, also cited by defendant SRR, the

17  plaintiff had been out on a leave of absence for a year and the Court found that the

18  employer had a reasonable business reason for filling his position when he was unaware

19  as to when he would be returning to work.  And, unlike the plaintiff in <u>Martin v.</u>

20  <u>Lockheed Missiles & Space Co.</u> (1994) 29 Cal.App.4th 1718, plaintiff here is not relying

21  on rank speculation as to the motives for his termination but, rather, specific and

22  substantial evidence based on numerous facts set forth above.

23         The fundamental lack of even a modicum of due process to plaintiff, by failing to

24  allow him any meaningful opportunity to explain his side of the story, together with the

25  numerous bad faith actions noted above, create a genuine issue as to defendant SRR's

26  "mistaken good faith belief" defense.

27  ///

28  ///

**C.  GENUINE ISSUES OF MATERIAL FACT EXIST AS TO PLAINTIFF'S CLAIM FOR FAILURE TO EFFECT REASONABLE ACCOMMODATION.**

In <u>U.S. Airways, Inc. v. Barnett</u> (2002) 535 U.S. 122, the U.S. Supreme Court held that to defeat a defendant's motion for summary judgment, an employee need only show that an "accommodation" seems reasonable on its face.  Once the plaintiff has shown that the accommodation that he/she needs is "reasonable," the burden shifts to the defendant/employer to provide case/specific evidence proving that reasonable accommodation would cause an undue hardship in the particular circumstances.  Id. at p. 1523.

The Fair Employment and Housing Act requires that an employer provide reasonable accommodations that will allow an employee, disabled or regarded as disabled, to perform the essential functions of the job.  Government Code, § 12940(m). "The essence of the concept of reasonable accommodation is that, in certain instances, employers must make special adjustments to their policies for individuals with disabilities." <u>McAlindin v. County of San Diego</u> (9th Cir. 1999) 192 F.3d 1226, 1236. An accommodation is "any change in the work environment or in the way things are customarily done that enables an individual with a disability to enjoy equal employment opportunities." 29 CFR § 1630.2(o)  "The presumption is that the accommodation is required unless the employer can demonstrate that the accommodation would impose an undue hardship." <u>McAlindin v. County of San Diego</u>, *Ibid, at p. 1237*.  Job restructuring or permitting an alteration of when or how an essential function is performed is a form of reasonable accommodation.  Government Code, § 12926(p)(2).

Defendant SRR contends that it did not fail to reasonably accommodate plaintiff because its annual revenue goals constituted an essential job function, and that to have allowed a proration of a sales goal as plaintiff requested, would have required it to "lower company standards," and claims that is not required by various cases cited in other circuits that then the 9th Circuit.  Yet even though plaintiff had to work limited hours for a prolonged period while undergoing cancer radiation treatment on three occasions and

21

1    requested prorated sales and chargeability goals, his supervisor Riley failed to allow this

2    accommodation, and in 2015 he was marked down for not meeting his $1 million goal.

3    (Blum Decl. ¶ 9; Ex. 15)  Defendant SRR's assertion that meeting a specific sales goal

4    is an "essential function" of plaintiff's job belies the purpose of reasonable

5    accommodation, i.e. to enable an employee to maintain his or her employment in the face

6    of a disability.  For the same reason that extending a leave of absence is a recognized

7    form of reasonable accommodation (2 Cal. Code of Regs. § 11068(c); <u>Jensen v. Wells</u>

8    <u>Fargo Bank</u> (2000) 85 Cal.App.4th 245, 263), so the proration of sales goals would,

9    presumably, have the same effect as the extension of a leave of absence, i.e. that there

10   would be a diminution in the employee's productivity.  Moreover, an employer's

11   judgment alone regarding what is or is not an essential job function is not conclusive,

12   when other facts suggest that the employer's professed judgment is not genuine or

13   correct.  <u>Cripe v. City of San Jose</u> (9th Cir. 2001) 261 F.3d 877, 887.  Further, that

14   plaintiff may or may not have been able to meet a specific sales goal would not justify a

15   finding of a "undue hardship" to defendant SRR.  This is particularly true where "the

16   overall financial resources, size and number of employees is an important factor in

17   determining if there is an undue hardship."  29 CFR § 1630.2(p)(2).  For these reasons,

18   genuine issues of material fact exist warranting a trial as to plaintiff's failure to

19   accommodate claim.

20          Defendant's reliance on <u>Hanson v. Lucky Stores, Inc.</u> (1999) 74 Cal.App.4th 215,

21   for its position that plaintiff was afforded reasonable accommodation by allowing him to

22   work from home and giving him leaves of absence, is misplaced.  Plaintiff claims that his

23   being written up for failing to meet quotas, when the reason for such failure was his

24   cancer related disability (and likely was the true motive for his termination), hardly meets

25   the test of reasonable accommodation.

26   ///

27   ///

28   ///

**D.  GENUINE ISSUES OF MATERIAL FACT EXIST AS TO PLAINTIFF'S CLAIM FOR FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS TO EFFECT REASONABLE ACCOMMODATION.**

Government Code, § 12940(n) provides that it is an unlawful employment practice "for an employer . . . to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known . . .disability or known medical condition." To trigger the duty to engage in this process requires only that the employer have "knowledge" of the disability. Prilliman v. United Airlines, Inc. (1997) 53 Cal.App.4th 935. In Humphrey v. Memorial Hospitals Association (9th Cir. 2001) 239 F.3d 1128, the Court stated: "The employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed."

Here, despite being on notice three times of plaintiff's serious cancer and surgery, no meetings or inquiry of any type was held by defendant SRR to determine what accommodations might be effected. Nor was there any dialogue as to how the adjustment of plaintiff's sales or chargeability goals might have been such an accommodation. (Blum Decl. ¶¶ 13-16)

Since genuine issues exist regarding whether defendant SRR met its obligations under Government Code, § 12940(n), summary adjudication as to this claim should be denied.

**E. GENUINE ISSUES OF MATERIAL FACT EXIST AS TO PLAINTIFF'S CLAIM FOR WRONGFUL TERMINATION BASED ON PUBLIC POLICY.**

Plaintiff's claim for wrongful termination based on public policy is grounded on an exception to the "at will" presumption embodied in Labor Code, § 2922, first enunciated in Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167.

///

23

1    CACI 2430 provides the elements of such a claim:

2        1.  That the plaintiff was employed by the defendant;

3        2.  That the defendant discharged the plaintiff;

4        3.  That the violation of public policy was a motivating reason for the plaintiff's

5    discharge; and

6        4.  That the discharge caused the plaintiff harm.

7        Defendant SRR's first argument as to this claim is that plaintiff allegedly failed to

8    articulate that the cell phone reimbursement was unlawful.  In the email wherein plaintiff

9    raised this issue, he referred specifically to Labor Code, § 2802, requiring reimbursement

10   of expenses incurred to employees, and to a recent case, <u>Cochran v. Schwan's Home</u>

11   <u>Service, Inc.</u> (2014) 228 Cal.App.4th 1137, wherein the very policy practiced by

12   defendant SRR was found to be unlawful.  (Blum Decl. ¶ 84; Ex. 37)

13       Defendant SRR's second argument is that because it allegedly terminated plaintiff

14   for defrauding defendant SRR regarding the EDD payment, there is no triable issue.  Yet

15   that issue is replete with genuine issues as to whether the professed reason was a pretext

16   to mask retaliatory animus, based on the same facts stated with respect to genuine issues

17   regarding plaintiff's discrimination claims.

18       And, temporal proximity between the protected activity and the adverse action is

19   strong evidence of causation.  <u>Passantino v. Johnson & Johnson Consumer Products, Inc.</u>

20   (9th Cir. 2000) 212 F.3d 493.  Further, unlike the case cited by defendant SRR, <u>Arteaga</u>

21   <u>v. Brink's, Inc.</u> (2008) 163 Cal.App.4th 327, abundant issues exist as to pretext in this

22   case.  And, Theis, who terminated plaintiff, had been forwarded plaintiff's "whistle

23   blowing" email.  (Blum Decl. ¶ 84; Ex. 37)

24   ///

25   ///

26   ///

27   ///

28   ///

24

1

## IV

2

## CONCLUSION

3      For all of the foregoing reasons, it is respectfully submitted that genuine issues of

4  material fact exist as to each of plaintiff's causes action.  Defendant SRR's Motion for

5  Summary Judgement or, In The Alternative, Partial Summary Judgement therefore should

6  be denied.

7

8  Dated:  July 28, 2017

9                                          _____
                                           WILLIAM M. CROSBY
10                                         Attorney for Plaintiff
                                           SIDNEY BLUM

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES AND ARGUMENT IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGEMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I, the undersigned, am employed in the aforesaid county; I am over the age of 18 years and not a party to the above-entitled action; my business address is 13522 Newport Avenue, Suite 201, Tustin, CA 92780-3707.

On July 28, 2017, I served the foregoing document described as **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES AND ARGUMENT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

Thomas H. Petrides, Esq.
Christopher A. Braham, Esq.
VEDDER PRICE (CA), LLP
1925 Century Park East
Suite 1900
Los Angeles, CA 90067

\_\_\_\_\_   BY MAIL
I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day, with postage thereon fully prepaid, at Tustin, California, in the ordinary course of business. I am aware that, on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

\_\_\_\_\_   BY PERSONAL SERVICE
I caused to be delivered such envelope by hand to the addressee at the above address.

XXX   BY E-MAIL
Via e-mail, I caused the above-referenced document to be transmitted to the above-named addressees at the following respective e-mail addresses: tpetrides@vedderprice.com and cbraham@vedderprice.com.

\_\_\_\_\_   BY FAX
Via facsimile transmission, I caused the above-referenced document to be transmitted to the above-named addressee at the following facsimile number: (424) 204-7702.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on July 28, 2017, at Tustin, California.

JENIFER MOODY